*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | | |
|---|---|---|
| *WESTCON MFG., INC., d/b/a THEAM USA,* | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| *v.* | ) | *No. 2:14-cv-00214-JHR* |
| | ) | (<u>*REDACTED 05/05/2017*</u>) |
| *RotaTHEAM SAS and SHUMAKER* | ) | |
| *INDUSTRIES, INC.,* | ) | |
| | ) | |
| *Defendants* | ) | |

*FINDINGS OF FACT AND CONCLUSIONS OF LAW ON PLAINITFF'S MOTION FOR CONTEMPT[1]*

The plaintiff, Westcon Manufacturing, Inc., has moved to enforce the consent judgment entered in this case on October 21, 2016 ("Consent Judgment") (ECF No. 117), and for a finding of contempt and assessment of sanctions.  Plaintiff THEAM USA's Motion to Enforce Consent Judgment and for Civil Contempt and Sanctions ("Motion") (ECF No. 120).   An evidentiary hearing was held on September 27 and 28, 2016, at which seven witnesses testified and 35 exhibits were admitted.  The parties have submitted their proposed findings of fact and conclusions of law (ECF Nos. 164, 166).  I now make the following findings of fact and conclusions of law.

### I.  Findings of Fact

1. The plaintiff filed this action on May 22, 2014.  The complaint alleged, *inter alia*, trademark infringement and breach of contract.  ECF No. 1.

---

[1] This decision is redacted in accordance with the plaintiff's request, which was unopposed by the defendants.  I have also deleted the second paragraph of section III, Conclusion, which provided the parties an opportunity to seek redactions of portions of the decision, failing which the court would have unsealed it in its entirety.

2.  The parties settled the case and incorporated the terms of the settlement into a proposed consent judgment, which was adopted by the court.  Consent Judgment.

3.  The plaintiff is a Maine-based manufacturer and distributor of conveyors mounted onto mixer trucks and related products and services.  Transcript (ECF Nos. 160-61) at 314-16.

4.  The plaintiff is the owner of the federal trademark registration for THEAM, for conveyors mounted onto mixer trucks.  Consent Judgment ¶ 3.

5.  Defendant RotaTHEAM is a French company that sells conveyors for use on mixer trucks, mostly in Europe.  Plaintiff's Exh. 15 ¶ 1; Transcript at 316.

6.  Defendant Shumaker is the United States distributor of mixer mounted conveyors and related products sold by RotaTHEAM in the United States under the brand RotaBELT.  Transcript at 120, 156.

7.  In 1981, Luc Thenaud, son of Rene Thenaud, one of the men who developed the mixer-mounted conveyor in France, formed Concrete Placement Systems (CPS) in the United States with Jean Garrec.  *Id*. at 229-33, 351, 405-06.

8.  Rene Thenaud gave CPS two conveyors and money to bring THEAM conveyors to the United States from France.  *Id*. at 229-32.

9.  Thenaud S.A., a small business in Jean Garrec's hometown in France, was purchased by Mr. Levesque in 2000.  He changed the name of the company to Theam S.A.  *Id*. at 217-18, 229.

10. Theam S.A. was reorganized in 2013 and its name was changed to RotaTHEAM.  *Id*. at 136.

11. The plaintiff has used the THEAM brand name since 1981.  *Id*. at 194.

12. RotaTHEAM sold THEAM-branded conveyor parts made in France to the plaintiff for use in the plaintiff's conveyors from 1981 to 2012. *Id*. at 261-63. Around 1985, the plaintiff began making parts for THEAM conveyors in the United States, in addition to importing them from THEAM in France. *Id*. at 406-07.

13. RotaTHEAM began doing business with defendant Shumaker in 2012. *Id*. at 337. This gave rise to the litigation that resulted in the Consent Judgment. Consent Judgment.

14. The Consent Judgment provides that the defendants will cease all use of the term THEAM in the United States, including use of the name RotaTHEAM, rebrand to a different mark (RotaBELT), and educate their employees on the terms of the settlement. *Id*. ¶¶ 4-5.

15. After the Consent Judgment was entered, the plaintiff identified some examples of marketing material that it believed violated the Consent Judgment. It notified the defendants, who promptly changed them without issue. Transcript at 351-52.

16. On April 7, 2016, the plaintiff discovered English webpages on RotaTHEAM's website that improperly contained references to THEAM and RotaTHEAM, including videos featuring RotaBELT conveyors, photographs of RotaBELT conveyors, and text that commingled RotaBELT and THEAM. *Id*. at 94, 311-12; Plaintiff's Exh. 7.

17. No one at RotaTHEAM reviewed the content of the website (theam.com/en) before it was posted online. Transcript at 38.

18. On April 12, 2016, the defendants discovered the improper references and took down the website less than an hour after the discovery. *Id*. at 184. Mark Knutson of

Shumaker first discovered the offending content and notified RotaTHEAM immediately. *Id*. at 355-56.

19. On April 13, 2016, the plaintiff filed the motion now before the court. ECF No. 120.

20. Studio Plune, which was hired by RotaTHEAM to create websites at www.rotabelt.com and www.theam.com, published the prohibited content on the English-language version of RotaTHEAM's website without its knowledge or authorization. Transcript at 23-24, 79-80.

21. Studio Plune was responsible for translating www.theam.com into various languages. *Id*. at 26. For the English version, Studio Plune was instructed to take the English text from the www.rotabelt.com website that was then under construction and to replace all references to RotaBELT with THEAM. *Id*. at 32, 38.

22. Studio Plune reviewed the website host statistics to determine the number of IP addresses that visited www.theam.com/en between April 1 and April 12, 2016. *Id*. at 48-52. After eliminating IP addresses associated with Studio Plune and RotaTHEAM, Studio Plune determined that six additional, unknown IP addresses visited the www.theam.con/en website between April 1 and April 12, 2016. *Id*.

23. Studio Plune cannot identify those six IP addresses. *Id*. at 52, 54. At least two of them belonged to the plaintiff or its attorneys. *Id*. at 310-13.

24. The plaintiff's attorney printed some photographs from RotaTHEAM's Facebook page. Plaintiff's Exh. 38. Vanessa Luque, the person responsible for loading content and uploading the photographs on the RotaTHEAM, Theam (France), and RotaBELT Facebook pages, could not explain why THEAM photos appeared on the RotaBELT

Facebook page or why photos of RotaBELT conveyors appeared on the THEAM Facebook page.  Transcript at 168-74, 176-77.

25. Luque was unable to reproduce Exhibit 38 and does not see THEAM photos on the RotaBELT Facebook page.  *Id*. at 171, 174.

26. Shumaker uses a brochure, Plaintiff's Exhibit 26, that states that RotaBELT came to the United States in 1982.  Plaintiff's Exh. 26 at [4].  The defendants were using this corporate history prior to the entry of the Consent Judgment as well as after. Transcript at 330-31.

27. Page 1 of Plaintiff's Exhibit 10 is the RotaBELT history that appears on the Shumaker website.  *Id*. at 368-69; Plaintiff's Exh. 10 at [1].

28. The Consent Judgment permits Shumaker to use the term "THEAM" solely to inform customers that it repairs and sells replacement parts intended for THEAM conveyors in the United States, subject, *inter alia*, to a disclaimer that Shumaker and/or RotaTHEAM "is not an authorized distributor of genuine THEAM replacement parts" and that "THEAM is a registered trademark of Westcon Mfg., Inc. d/b/a Theam USA." Consent Judgment, ¶ 4(g) (emphasis omitted).  Shumaker's compliance instructions to its employees do not say that the disclaimer is required when advising customers about whether Shumaker may supply OEM replacement parts for THEAM conveyors in the United States.  Defendants' Exh. 9.

29. The English version of www.theam.com contains a disclaimer that Theam France's conveyors are not available in the United States, but it is in French.  Plaintiff's Exh. 11 at [2].

30. THEAM USA created what it calls the "Lee Mascot" as part of a safety campaign for CPS in 1983.  Transcript at 197-98.  A page of the theam.com website contains an image like the "Lee Mascot."  *Id*. at 200-01 & Plaintiff's Exh. 40.

31. One of THEAM USA's safety posters includes a sketch of a truck that was created in or around 1985.  Transcript at 202 & Plaintiff's Exh. 32.  A page from the website for Beko Teknik that can be accessed through theam.com depicts a similar truck sketch.  Transcript at 202-04 & Plaintiff's Exhs. 30, 32.  Beko Teknik is RotaTHEAM's Denmark distributor.  Transcript at 203-04 & Plaintiff's Exh. 30.

32. The RotaTHEAM posting on Kompass.com states that RotaTHEAM exports conveyors worldwide.  Transcript at 108-09 & Defendants' Exh. 2.

33. RotaTHEAM's profile on a site called Corporama includes a video of THEAM USA conveyors.  Transcript at 109-10 & Defendants' Exh. 3.  RotaTHEAM did not contact Corporama to have the THEAM USA video removed from its listing.  Transcript at 109-11.

34. A search in Google Images for RotaBELT images leads to a link to theam.com.  *Id*. at 209-11; Plaintiff's Exh. 34.

35. THEAM USA adopted gray and orange colors for the brand before Theam S.A. also adopted those colors.  *Id*. at 217-18.

36. The defendants are using the same gray and orange color scheme for RotaBELT and THEAM.  Plaintiff's Exhs. 29-63, 38.

37. The new RotaBELT logo created by Luque bears a blue and red color scheme, but Shumaker blocked her efforts to rebrand RotaBELT in that manner.  Transcript at 178-80, 182; Plaintiff's Exh. 29-88.

6

38. Shumaker advises its employees to tell customers that, if they purchased their conveyor from "the French company, we are the exclusive distributor in the United States for OEM replacement parts for that conveyor."  Defendants' Exh. 9, at [2].

39. It is Shumaker's position that any conveyor purchased in the United States through THEAM USA is a "conveyor from the French company."  Transcript at 428-29.

40. Mark Knutson, a former employee of the plaintiff now working for Shumaker, testified that it is more probable than not that the numbers Shumaker is advertising as sales of RotaBELT models actually also include sales of models sold through THEAM USA.  *Id*. at 350.

41. The RotaBELT display at the Aggregate & Ready Mix Association of Minnesota trade show in December 2015 stated that RotaBELT is the number one selling conveyor in the world.  *Id.* at 372-73.

42. RotaBELT videos featuring the RotaBELT models TS15 and T3D16 appeared on theam.com between April 1 and April 12, 2016, in both the English and German versions of the website.  *Id*. at 80, 92-93 & Plaintiff's Exhibit 7.

43. Lehigh Hanson is a prior customer of both the plaintiff and the defendants.  Transcript at 269-72, 416-21.

44.  Both the plaintiff and the defendants were competing for a Hanson order of five conveyors during the first half of 2016.  *Id*.

45. Shumaker's original quote for the Hanson order went out in the fall of 2015, sometime before October 2015.  *Id*. at 420-21.  Luque and representatives of Shumaker met with Hanson twice.  *Id*. at 379-82.   Brett Shumaker believed that he had a verbal commitment form Hanson in March 2016.  *Id*. at 433.

46. THEAM USA provided a quote to Hanson for five conveyors in 2016.  *Id*. at 269-72. From January through mid-April of 2016, THEAM USA felt that the sale was coming its way.  *Id.*  In May 2016, Hanson pressed THEAM USA for a price reduction.  *Id*. at 271.

47. [**REDACTED**].  Hanson did not buy the conveyors from THEAM USA.  *Id*. at 270.

## II.  Conclusions of Law

A consent judgment has the force of any court order.   *See, e.g., Palmigiano v. DiPrete*, 700 F. Supp. 1180, 1192 (D.R.I. 1988) ("The fact that one of the orders at issue here was a consent judgment in no way [a]ffects the ability of the Court to enforce it through a finding of civil contempt.").   A party seeking to have its opponent held in contempt must establish (1) that the alleged contemnor had notice that it was "within the order's ambit"; (2) that the order was clear and unambiguous; (3) that the alleged contemnor had the ability to comply; and (4) that the order was indeed violated.  *United States v. Saccoccia*, 433 F.3d 19, 27 (1st Cir. 2005) (quoting *Project B.A.S.I.C. v. Kemp*, 947 F.2d 11, 17 (1st Cir. 1991)).  "When the question turns on findings of fact, a complainant must prove civil contempt by clear and convincing evidence."  *Id*. (citation and internal quotation marks omitted).

> The question is not whether the order is clearly worded as a general matter; instead, the "clear and unambiguous" prong requires that the words of the court's order have clearly and unambiguously forbidden *the precise conduct on which the contempt allegation is based.*

*Id.* at 28 (emphasis in original).  The first and third prongs of the test are not at issue in this case.

The defendants concede that the English version of www.theam.com violated the Consent Judgment from April 1, 2016 through April 12, 2016.  *See* Defendants' Proposed Findings of Fact and Conclusions of Law ("Defendants' Submission") (ECF No. 164) at 2, ¶¶ 5-7 & 10, ¶ 6.  They argue, however, that they made "'diligent efforts'" that resulted "'in substantial compliance with'"

the Consent Judgment "by discovering the violation through timely vigilance and self-policing as well as the immediate correction of the webmaster's error within minutes of discovery[,]" quoting language from *AccuSoft Corp. v. Palo*, 237 F.3d 31, 47 (1st Cir. 2001).  *Id*. at 10, ¶ 6.  This, they say, means that the court should not find them in contempt.  *See id*.

Not surprisingly, the plaintiff sees this brief period in a different light, characterizing it, along with other alleged violations discussed below, as "bad faith efforts to skirt compliance with the Consent Judgment[.]"  Plaintiff THEAM USA's Proposed Findings of Fact and Conclusions of Law in Support of its Motion to Enforce Consent Judgment and for Civil Contempt and Sanctions ("Plaintiff's Submission") (ECF No. 166) at 39, ¶ 215.  It asserts that the defendants have "devised new ways to associate RotaBELT with THEAM and RotaTHEAM (the 'French company') and to misinform their employees and customers about the origins of THEAM USA conveyors and conveyor parts in an effort to portray RotaBELT as the true source of THEAM conveyors and part in the U.S."  *Id*. at 44, ¶ 230.  Because this argument rests in large part on defendants' other alleged deliberate violations of the Consent Judgment, I will address each of those violations *seriatim* before circling back to the one admitted violation.

## A.  Paragraph 4(a) of the Consent Judgment

Paragraph 4(a) of the Consent Judgment provides:

> DEFENDANTS will discontinue use in the United States of any company name, trade name, or product or service name containing the term "Theam" or "RotaTheam" in any form, including but not limited to any phonetic or visual likeness thereto ("Prohibited Terms"), and will discontinue the marketing, sale and distribution of all products and services bearing such Prohibited Terms. Notwithstanding the foregoing, nothing shall prevent the DEFENDANTS, solely in communications with each other, from using the Prohibited Terms.  For avoidance of doubt, DEFENDANTS may continue to use the term "RotaBelt" in their business activities, so long as it is not cross-marketed or otherwise linked to the Prohibited Terms.

Consent Judgment ¶ 4(a).

9

The plaintiff contends that one or both of the defendants violated this subparagraph by "publication of the English version of the theam.com website containing literal references to RotaBELT in text, videos, and photographs"; by "the failure to change and the adoption of a RotaBELT logo bearing a visual likeness to that of Theam France"; by "continuing to cross-market RotaBELT with THEAM and RotaTHEAM through the promotion of an identical corporate history that emphasizes that RotaBELT is indistinguishable from THEAM and RotaTHEAM"; and "by adoption of similar logos that cross-market RotaBELT and THEAM[.]"   Plaintiff's Submission at 45-46, ¶¶ 233-34, 236.

As noted above, I will address the first alleged violation, which is admitted, later in this opinion.  As to the second alleged violation, the plaintiff apparently contends that the use of the same colors in the defendants' "branding" violates Paragraph 4(a), as does the use of a logo bearing a visual likeness to that of Theam France.  It cites no authority for the proposition that the use of identical colors, standing alone, constitutes a "company name, trade name, or product or service name[,]" which are the subjects of Paragraph 4(a).  The language of Paragraph 4(a) does not reach the precise conduct upon which the allegation is based, the colors or logos used by the defendants, so long as they do not bear a phonetic or visual likeness to the terms "THEAM" or "RotaTHEAM." The plaintiff's interpretation would allow it to change its colors or logos to resemble those used by the defendants and thereby force the defendants to change their branding – a result inconsistent with the "narrow cabining" of the circumstances in which contempt may be found that was contemplated by the *Saccoccia* court.  433 F.3d at 28.

The plaintiff's third alleged violation suffers first from a failure to define "cross-marketing."  The placement of the term in the context of Paragraph 4(a) suggests that it is a linking of RotaBELT with THEAM or RotaTHEAM in any marketing materials, and I will use that

definition as a guide.  A corporate history, strictly speaking, is a marketing device; the problem in this case is that the parties do, in fact, share a corporate history up to the point that the plaintiff stopped selling any of the defendants' products.  Paragraph 4(a) cannot reasonably be read to require RotaTHEAM to disavow or ignore its corporate history when seeking customers in the United States.  Again, it is the precise conduct upon which the alleged violation is based that must be unambiguously forbidden by the cited provision of the Consent Judgment.  That is not the situation presented by the plaintiff with respect to the defendants' recitation of RotaTHEAM's corporate history.  For the reasons already discussed, the same is true of the alleged similarity of logos, the plaintiff's fourth alleged violation.

### B.  Paragraph 4(c) of the Consent Judgment

Paragraph 4(c) of the Consent Judgment provides:

> DEFENDANTS will not claim or suggest ownership in any way of any conveyor or replacement part sold by THEAM USA, and agree[] not to use THEAM USA's copyrighted material, including but not limited to parts manuals, parts files, product and service photographs, decals, technical documents, maintenance manuals, safety operation manuals, the "Lee" mascot, or any other material developed by THEAM USA for the marketing, sale or service of its products.

Consent Judgment ¶ 4(c).

The plaintiff contends that the defendants violated this paragraph by "including in the total sales unit numbers for Theam France and for RotaBELT conveyors for which they supplied *parts* to THEAM USA, but which were manufactured by THEAM USA using parts from a variety of other sources."  Plaintiff's Submission at 46, ¶ 239 (citation omitted) (emphasis in original).  It contends that Shumaker has violated this provision by "adopting a compliance policy with the premise that all conveyors sold by THEAM USA in the United States since 1982 are, in fact, manufactured and supplied by RotaBELT."  *Id*. ¶ 238 (citation omitted). It alleges that RotaTHEAM has violated this provision by "link[ing] to its Denmark distributor, Beko Teknik,

which features the Lee mascot on its website[,]" and by "using the graphic of a truck that was developed by THEAM USA." *Id.* ¶ 241 (citations omitted).

The first allegation appears to be correct.  Paragraph 4(c) clearly prohibits any suggestion that RotaTHEAM ("the French company") owned any conveyor or replacement part sold by the plaintiff, and the inclusion of all units sold by the plaintiff in the defendants' claimed number of total sales suggests that RotaTHEAM owned those units before they were sold.  The suggestion that replacement parts may only be obtained from the French company, on the other hand, does not violate this paragraph, which refers only to replacement parts that have already been sold by the plaintiff.

The second allegation elevates what is at most a practice of Shumaker into a "compliance policy."  That overstatement aside, the possibility of violation turns on a very small point.  If Shumaker tells its employees to tell customers that Shumaker is the exclusive distributor in the United States for replacement parts *if they purchased their conveyor from the French company*, Defendant's Exh. 9 at [2], without also advising them that any conveyor purchased in the United States is, by definition, purchased "from the French company," then it is not claiming or suggesting that Shumaker owns any replacement part "sold by THEAM USA."  The plaintiff's evidence shows that Brett Shumaker, and perhaps Knutson, believe that all conveyors purchased through the plaintiff are "purchased from the French company," but it does not make the necessary link between this belief and the information that is being provided to customers, or to the world at large.

As to the third allegation, the plaintiffs have not demonstrated that RotaTHEAM has any control over the content of Beko Teknik's website, but it might be said to be "using" the Lee mascot by linking its website to the website of one of its distributors that does feature the Lee mascot.  There is no evidence that RotaTHEAM was aware of the use of the mascot by Beko

12

Teknik, and, under the circumstances, any violation of Paragraph 4(c) in this context is quite minor. However, the direct use by RotaTHEAM of the plaintiff's truck sketch does violate Paragraph 4(c).  *Compare* Plaintiff's Exh. 32 (THEAM USA safety poster) *with* Plaintiff's Exh. 30 (screen shot of page from theam.com website).

### C.  Paragraph 4(d) of the Consent Judgment

Paragraph 4(d) of the Consent Judgment provides:

> SHUMAKER and RotaTHEAM will not reference each other or link to each other's websites (including, but not limited to, theam.com and rotatheam.com) or on any social media or other internet site.  DEFENDANTS will not link to or otherwise market SHUMAKER on any [of] DEFENDANT[S'] websites as the U.S. distributor of any products that are marketed, advertised, offered for sale or sold on any website bearing the Prohibited Terms. The websites for THEAM and ROTATHEAM must include a disclaimer that their conveyors are not available in the U.S.

Consent Judgment ¶ 4(d).

The plaintiff contends that RotaTHEAM has violated this paragraph by "posting videos on theam.com featuring Shumaker's offering of the TS15 and T3D16 RotaBELT conveyor models" and by providing a disclaimer on theam.com only in French.  Plaintiff's Submission at 47, ¶¶ 243, 245.  It contends that Shumaker has violated this paragraph by "posting a corporate history of RotaBELT that references, i.e. adopts, the corporate history of Theam France."  *Id.* ¶ 244 (citation omitted).

The defendants do not respond directly to these arguments.  If these are instances of the "legacy marketing collateral" to which the defendants refer, Defendants' Submission at 9, ¶ 5, they assert that their "diligent efforts" have resulted in "substantial compliance" with the Consent Judgment, permitting this court to "avoid a finding of contempt."  *Id.* (citation and internal quotation marks omitted).  However, they point to no evidence of diligent efforts or substantial

13

compliance other than taking down the offending English language version of RotaTHEAM's website. That website is not involved in the conduct at issue here.

Nor does the Consent Judgment permit this conduct. To the contrary, the conduct in the first alleged instance fits within the express terms of Paragraph 4(d). The second instance may not be a technical violation because, as the court understands it, no English language version of theam.com currently exists, and that is where one would expect to find an English language disclaimer. However, considering that the plaintiff is an American entity and that the agreement concerns doing business in the United States, an English-language disclaimer on all versions of the website would be advisable. The terms of Paragraph 4(d) are not limited by the language used on any website.

The third instance, the posting of the corporate history, is a violation because Shumaker has posted it, thereby "referencing" THEAM. However, it is a best a "referencing" of another "referencing," hardly a violation worthy of sanctions.

### D. Paragraph 4(g) of the Consent Judgment

Paragraph 4(g) of the Consent Judgment provides:

Notwithstanding the above restriction in subparagraph f, SHUMAKER may make nominative fair use of the term THEAM solely to inform customers that it repairs and sells replacement parts intended for THEAM conveyors in the U.S. if and to the extent that such fair use is permitted under U.S. trademark law and subject to the [following]:

i.    Any such use of THEAM constitutes a true statement;

ii.   Except for the disclaimer provided below, THEAM may appear only once in any particular advertisement;

iii.  THEAM may not be emphasized or set off against the surrounding text in any manner, including without limitation, use of italics, bold font, different font, highlighting, or differential sizing; and

iv.   Any use of THEAM pursuant to this subparagraph g shall be accompanied by the following disclaimer in a conspicuous location near the reference to THEAM: *Shumaker Industries [and/or RotaTHEAM, if applicable] is not an authorized distributor of genuine THEAM replacement parts. THEAM is a registered trademark of Westcon Mfg, Inc. d/b/a Theam USA.*

> SHUMAKER shall not avoid the obligations set forth in this paragraph by delegating or assigning to RotaTHEAM any nominative fair uses of THEAM that would trigger the obligations in this paragraph if those nominative fair uses were made by SHUMAKER.

Consent Judgment ¶ 4(g).

The plaintiff contends that the defendants have violated this paragraph by "adopting a compliance policy that falsely advises customers that all THEAM conveyors in the United States were manufactured by the French company, that falsely advises customers that Shumaker is the authorized distributor of genuine THEAM replacement parts, and by failing to provide the required disclaimer that Shumaker is not the authorized distributor of genuine THEAM replacement parts." Plaintiff's Submission at 47-48, ¶ 247 (citations omitted).

Again, the defendants do not address this argument directly, simply asserting that "the Consent Judgment is devoid of specific reference to such conduct as prohibited." Defendants' Submission at 10, ¶ 7. To the contrary, as presented by the plaintiff, the alleged conduct would violate Paragraph 4(g). However, the citations to the record given by the plaintiff in support of these allegations do not fully support them. Paragraphs 72-74 of the plaintiff's proposed findings of fact do not establish the existence of a "compliance policy" at Shumaker, and they do not mention RotaTHEAM at all. Nor do they say that Shumaker "advises customers that all THEAM conveyors in the United States were manufactured by the French company[.]" Rather, they say that "[i]t is Shumaker's position that any conveyor purchased in the United States through THEAM USA is a 'conveyor from the French company[,']" and that Brett Shumaker believes this to be true. Plaintiff's Submission at 16, ¶¶ 72-73.

The same is true of the second allegation of violation. Paragraphs 70-71 of the plaintiff's proposed findings of fact do not establish that Shumaker represents that it is the authorized dealer of genuine THEAM replacement parts; rather, they show that Shumaker employees are directed

15

to tell customers that Shumaker is the exclusive [not "authorized"] distributor for OEM replacement parts for conveyors *purchased from* "the French company." *See* Plaintiff's Submission at 14, ¶¶ 70-71. Any conveyor purchased from the plaintiff would not have been purchased from the French company. In addition, the disclaimer language set out in Paragraph 4(g), read in context, refers to advertising and written statements, rather than verbal statements. Of course, the requirement of truthfulness does apply to any verbal statements as well as written ones.

As to the third allegation of violation, the only proposed finding of fact cited by the plaintiff in support deals only with "Shumaker's compliance instructions to its employees" about what to say to customers. Again, the disclaimer requirement in Paragraph 4(g), as written, applies to written fair use, not oral statements. In addition, there is no evidence that any Shumaker employee has told any customer or potential customer that Shumaker *is* an authorized dealer of genuine THEAM replacement parts.

### E. Paragraph 5 of the Consent Judgment

Paragraph 5 of the Consent Judgment provides: "DEFENDANTS shall train each of their employees, existing and future, on the obligations contained in Paragraph 4 of this Consent Judgment." Consent Judgment ¶ 5. The plaintiff contends that both defendants have violated this provision because Shumaker "has provided no such training and, in fact, its written instructions to employees are in conflict with the obligations"; and RotaTHEAM "has only provided an Internal Memo, Plaintiff's Exhibit 17, that prohibits the use of the term THEAM in the United States." Plaintiff's Submission at 48, ¶¶ 249-50.

With respect to RotaTHEAM, the plaintiff has proffered no evidence that the memorandum and contract language upon which the plaintiff's claim of violation rests, *see id*. at 12-13, ¶¶ 61-64, are the only means of educating its employees in accordance with Paragraph 5 that were

16

undertaken by RotaTHEAM.  This omission is fatal to its claim of violation of Paragraph 5 of the Consent Judgment by RotaTHEAM.

The plaintiff characterizes Shumaker's requirement that its employees read Paragraph 4 of the Consent Judgment as insufficient to meet the training requirement of Paragraph 5.  Plaintiff's Submission at 48, ¶ 249.  It cites no authority for this conclusion.  The plaintiff's assertion that no training is provided by Shumaker is belied by Paragraph 66 of its proposed findings of fact: "Mr. Shumaker testified that Shumaker provides training to its employees on compliance with the Consent Judgment[.]"  Plaintiff's Submission at 13, ¶ 66.  In addition, the plaintiff does not specify the manner in which Shumaker's written instructions to its employees are in conflict with Paragraph 5 of the Consent Judgment.

The plaintiff has not demonstrated any violation of Paragraph 5 of the Consent Judgment by either defendant.

### F.  Requested Relief

The plaintiff asks this court to find that a "pattern  . . . emerges from the testimony and documentary evidence" demonstrating that the defendants "have not taken compliance with the Consent Judgment seriously and, to the contrary, have instead devised new ways to associate RotaBELT with THEAM and RotaTHEAM (the 'French company') and to misinform their employees and customers about the origins of THEAM USA conveyors and conveyor parts in an effort to portray RotaBELT as the true source of THEAM conveyors and parts in the U.S."  *Id*. at 44, ¶ 230.  With the exception of the admitted 12-day violation, the testimony and evidence submitted at the hearing demonstrate an unfortunate sloppiness on the defendants' part, at times, but no pattern of attempts to avoid compliance with the Consent Judgment.

The plaintiff's requested relief includes sanctions against the defendants and individually against their officers "in sufficient amounts to make THEAM USA whole, including amounts for

attorneys' fees and costs"; modification of the Consent Judgment "to prohibit Defendants from using the RotaBELT brand name in the United States"; and modification of the Consent Judgment to prohibit the defendants "from using trade dress, colors, and logos, and other product identifiers in the U.S. that are similar to those of THEAM/RotaTHEAM[.]" *Id*. at 48, ¶ 251.

Specifically, the plaintiff seeks an award of "the profits resulting from the sale of the conveyors by RotaTHEAM to Hanson Aggregates, in light of the highly suspect and too coincidental timing of the launch of the English version theam.com website just at the critical time that Hanson was making its purchasing decision[,]" *id*. at 49, ¶ 252 (citation omitted), and compensation for its asserted loss of goodwill and reputation among its customers in the United States, *see id.* ¶ 253.

First, the plaintiff has not demonstrated any loss of goodwill and reputation as a result of the violations of the Consent Judgment that it has proved to have occurred: the 12-day appearance of the English version of theam.com, the inclusion of all units sold by the plaintiff in the defendants' claimed number of total sales; the use of the plaintiff's truck sketch on theam.com; and the lack of an English-language disclaimer on RotaTHEAM's non-English language websites.

Next, the plaintiff has not established that Shumaker's sale to Hanson resulted from a violation of the consent judgment.  There was no evidence of any reliance by Hanson on the English version of theam.com that appeared for 12 days and was seen by three or four unidentified visitors, nor that any of the other violations listed above affected Hanson's decision.  The plaintiff and Shumaker clearly both submitted bids to Hanson; neither the submitting of the bid nor any negotiations that followed were forbidden by the consent judgment.

The scale of the proven violations does not justify the extreme relief requested by the plaintiff.  There is no evidence of bad faith by the defendants in any of the proven violations.  Yet,

18

the defendants are not entitled to judgment in their favor because they made "diligent efforts" that have resulted "in substantial compliance with the underlying order[.]"  Defendants' Submission at 9, ¶ 5 (citation and internal quotation marks omitted).  With respect to the four violations listed above, the Consent Judgment clearly forbade those actions, the defendants did not make diligent efforts to avoid them, and compliance with the consent judgment, particularly in the case of the 12-day website violation, was not substantial.  Accordingly, I decline the defendants' invitation to reject the request to find them in contempt.

The defendants also argue that no monetary award may be made in this case because it would not serve to coerce them into compliance with the order or to compensate the plaintiff for losses that it sustained.  *See id*. at 10, ¶¶ 8-9; *see. e.g., FTC v. Case Equip. Co.*, 826 F. Supp. 579, 580 (D. Me. 1993).  Further, they contend, civil contempt sanctions must never be punitive.  *See id*.  In fact, some coercive relief is appropriate here, if only to ensure that the defendants do not in the future act first and think about the Consent Judgment later, as they have been shown to have done since the entry of the Consent Judgment, or to continue to fail to seek out and correct existing conditions or situations that became violations upon the entry of the Consent Judgment.  *See, e.g., Rodríguez-Miranda v. Benin*, 829 F.3d 29, 45 (1st Cir. 2016) ("[C]ivil contempt is imposed to coerce *present or future* compliance with an order of the court.") (citation and internal quotation marks omitted) (emphasis added).  I conclude that a sanction in the amount of $10,000 is sufficient to coerce future compliance with the Consent Judgment in this case.

I decline, however, to award the plaintiff attorney fees or costs.  While the First Circuit has recognized that "make-whole relief" for civil contempt can encompass such an award, *Goya Foods, Inc. v. Wallack Mgt. Co*., 290 F.3d 63, 78 (1st Cir. 2002), the primary violation in this case was corrected prior to the time the plaintiff filed the motion at issue, and the plaintiff has shown

19

no resultant injury from any violation.  In the circumstances, an award of attorney fees and costs is inappropriate.

### III.  Conclusion

For the foregoing reasons, the plaintiff's Motion to Enforce Consent Judgment and for Civil Contempt and Sanctions is **GRANTED,** but only to the extent of sanctions in the amount of $10,000 (ten thousand dollars).  Each party will be responsible for its own costs and attorney fees.

The motion of Defendant RotaTHEAM *in limine* to exclude the plaintiff's evidence of lost profits (ECF No. 55), on which I reserved ruling (ECF No. 106), to the extent that it was not resolved at the hearing, is **DENIED.**

Dated this 31ˢᵗ day of March, 2017.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge.