UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| WESTCON MFG., INC., d/b/a THEAM USA, <br><br> Plaintiff <br><br> v. <br><br> RotaTHEAM SAS and SHUMAKER INDUSTRIES, INC., <br><br> Defendants | ) ) ) ) ) ) ) No. 2:14-cv-00214-JHR ) ) ) ) ) ) |

*MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S MOTION
FOR AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW*

Pursuant to Federal Rule of Civil Procedure 52(b), the plaintiff seeks to amend a limited number of findings of fact and a single conclusion of law in my decision on its motion to enforce an October 21, 2015, consent judgment. *See* Westcon, Mfg., Inc. d/b/a THEAM USA's Rule 52(b) Motion for Amended Findings of Fact and Conclusions of Law ("Motion") (ECF No. 172) at 1; [Sealed] Findings of Fact and Conclusions of Law on Plaintiff's Motion for Contempt ("Decision") (ECF No. 171); Consent Judgment (ECF No. 117). I grant the Motion in part and deny it in part in the manner and for the reasons set forth below and simultaneously file herewith my Amended Findings of Fact and Conclusions of Law on Plaintiff's Motion for Contempt.

### I.  Applicable Legal Standards

Federal Rule of Civil Procedure 52(b) provides that, "[o]n a party's motion[,]" the court "may amend its findings – or make additional findings – and may amend the judgment accordingly." Fed. R. Civ. P. 52(b). "The primary purpose of Rule 52(b) is to enable the appellate court to obtain a correct understanding of the factual issues determined by the trial court as a basis for the conclusions of law and the judgment entered thereon." 9C Charles Alan Wright & Arthur

1

R. Miller, *Federal Practice and Procedure* ("Wright & Miller") § 2582, at 352-53 (3d ed. 2008) (footnote omitted).

"A party who failed to prove his strongest case is not entitled to a second opportunity to litigate a point, to present evidence that was available but not previously offered, or to advance new theories by moving to amend a particular finding of fact or a conclusion of law." *Id.* at 353 (footnote omitted). *See also, e.g.*, *Nat'l Metal Finishing Co. v. BarclaysAmerican/Commercial, Inc.,* 899 F.2d 119, 123 (1st Cir. 1990) (motions under Rule 52(b) are "not intended to allow parties to rehash old arguments already considered and rejected by the trial court" but, rather, are intended to "permit the correction of any manifest errors of law or fact that are discovered, upon reconsideration, by the trial court") (citation omitted); *Dash v. Chicago Ins. Co.,* No. Civ.A 00-11911-DPW, 2004 WL 2337021, at *1 (D. Mass. Oct. 18, 2004) ("A Rule 52(b) motion is meant to correct, clarify, or amplify the findings and is not meant to provide an avenue for relitigating issues on which the moving party did not prevail at trial.") (citation and internal punctuation omitted).

## II.  Discussion

**Finding of Fact No. 7**. *See* Motion at 2-3. Granted in the form set forth in the plaintiff's reply brief. The finding as worded contains errors of fact. As the plaintiff notes, the parties "generally agree that [this finding] should be amended to reflect that Jean Garrec formed CPS [Concrete Placement Systems] in 1981 and that Luc Thenaud later become a partner in CPS after its formation, possibly in 1982." Westcon Mfg., Inc. d/b/a THEAM USA's Reply in Further Support of Its Motion for Amended Findings of Fact and Conclusions of Law ("Reply") (ECF No. 175) at 2 (citations and footnote omitted); *see also* Defendants' Response to Plaintiff's Rule 52(b) Motion for Amended Findings of Fact and Conclusions of Law ("Response") (ECF No. 174) at 2-

3.  However, I decline to adopt the defendants' further proposed finding, in the event the court were inclined to grant the requested amendment, that "there was a partnership between CPS and Rene Thenaud, Luc Thenaud and/or Thenaud S.A." Response at 3. As the plaintiff notes, *see* Reply at 2, the defendants did not separately move to amend the Decision. Nor, prior to its issuance, did they propose the inclusion of this fact. *See* Defendants' Proposed Findings of Fact and Conclusions of Law (ECF No. 164) ¶¶ 11-17.[1] Finding of Fact No. 7, accordingly, is amended to state:

> In 1981, Jean Garrec formed Concrete Placement Systems (CPS) in the United States. *Id*. at 229-33, 405-06. After CPS's formation, possibly in 1982, Luc Thenaud, the son of Rene Thenaud, one of the men who developed the mixer-mounted conveyor in France, became a partner in CPS. *Id*.

**Finding of Fact No. 8**. *See* Motion at 3. Granted in part, to the extent that, as the defendants concede, *see* Response at 3, this finding erroneously states that Rene Thenaud gave CPS (rather than the Garrecs) two conveyors and money, and otherwise denied, to the extent that the plaintiff seeks the removal of the word "THEAM" from the part of the finding stating that Rene Thenaud did so "to bring *THEAM* conveyors to the United States from France[,]" Finding of Fact No. 8, Decision at 2 (emphasis added). The plaintiff objects that the conveyors were not *branded* as THEAM conveyors, *see* Motion at 3; however, as the defendants point out, *see* Response at 3, the finding does not so state. In any event, the concern motivating the requested removal of the descriptor "THEAM" – that the finding as worded would permit RotaTHEAM to contest the plaintiff's now incontestable trademark registration for THEAM by claiming to be the senior user of the mark in the United States, *see* Reply at 3-4, is not well-founded. The defendants reaffirm

---

[1] In any event, the defendants' proposed additional finding is equivocal, consistent with the testimony on which they rely. Jean Garrec testified that he believed that CPS was in a partnership with Thenaud N.A. rather than Mr. Thenaud (meaning, insofar as appears, Rene Thenaud), but that he did not remember. *See* Transcript (ECF Nos. 160-61) at 409.

that, consistent with their representation in the Consent Judgment, they do not seek to challenge the plaintiff's use or ownership of the THEAM trademark. *See* Defendant's Sur-Reply to Plaintiff's Rule 52(b) Motion for Amended Findings of Fact and Conclusions of Law ("Surreply") (ECF No. 178) at 1-2. Accordingly, Finding of Fact No. 8 is amended to state:

> Rene Thenaud gave Jean Garrec and his wife, Lolly Garrec, two conveyors and money to bring THEAM conveyors to the United States from France. *Id*. at 229-32.

**Finding of Fact No. 12**. *See* Motion at 3-4. Granted in part, in the form set forth in the plaintiff's reply brief, as to the requested clarification of the identity of the sellers of conveyor parts made in France, and otherwise denied, as to the requested deletion of the phrase "THEAM-branded." On the first point, there is no dispute that Thenaud, S.A., and Theam, S.A., sold conveyor parts made in France to the plaintiff or that both were predecessor companies to RotaTHEAM. *See* Motion at 3-4; Response at 4-5; Reply at 4-5. On the second point, the citation to the testimony of Lolly Garrec for the proposition that the parts sold were "THEAM-branded" is at most incomplete, rather than manifestly incorrect. Lolly Garrec testified that the plaintiff bought the majority of all of its conveyor parts from Thenaud, S.A., and Theam, S.A., from 1981 to 2000, and then a dwindling number until 2012. *See* Transcript at 261-63. One could reasonably infer that the imported parts were "THEAM-branded." Beyond this, as the plaintiff acknowledges, *see* Motion at 4, the record elsewhere contains direct evidence that this was so, in the form of testimony of RotaTHEAM's president, Jean-Baptiste Mérian, *see* Transcript at 155-56. The plaintiff contends that this evidence is "unreliable" because Mérian lacked personal knowledge of the operations of Thenaud S.A. or Theam S.A. prior to 2010 or 2011, when he was hired by Theam S.A. Motion at 4. Yet, at hearing, I overruled two objections by the plaintiff to the Mérian testimony on foundation grounds. *See* Transcript at 153. A Rule 52(b) motion "is not meant to

4

provide an avenue for relitigating issues on which the moving party did not prevail at trial." *Dash*, 2004 WL 2337021, at *1 (citation and internal quotation marks omitted).[2] In any event, for the same reasons discussed above, the plaintiff's concern that the defendants could use this finding of fact to challenge its U.S. trademark, *see* Reply at 5-6, is not well-founded, *see* Surreply at 1-2. Finding of Fact No. 12, therefore, is amended to state as follows:

> RotaTHEAM's predecessors, Thenaud S.A. and Theam S.A., sold THEAM-branded conveyor parts made in France to the plaintiff for use in the plaintiff's conveyors from 1981 to 2012. *Id*. at 155, 261-63. Around 1985, the plaintiff began making parts for THEAM conveyors in the United States, in addition to importing them from RotaTHEAM's predecessor, Thenaud S.A., in France. *Id*. at 406-07.

**Finding of Fact No. 16**. *See* Motion at 4-5. Granted with the modification proposed by the defendants and agreed to by the plaintiff. *See* Response at 5; Reply at 6. Finding of Fact No. 16, therefore, is amended to state:

> On April 7, 2016, the plaintiff discovered English webpages on RotaTHEAM's website that improperly contained references to RotaBELT and Shumaker, including videos featuring RotaBELT conveyors, photographs of RotaBELT conveyors, and text that commingled RotaBELT and THEAM. *Id*. at 94, 311-12; Plaintiff's Exh. 7.

**Last Full Sentence on Page 10**.[3] *See* Motion at 5-6. Granted in part, as to the requested deletion of the phrase "up to the point that the plaintiff stopped selling any of the defendants' products." The plaintiff further argues that the finding that the parties shared "a corporate history" is incorrect because "[t]here is no evidence to suggest that CPS (or Westcon) shared a corporate history with Thenaud S.A., Theam S.A., or RotaTHEAM" but, rather, only formed a partnership for a period of time with Luc Thenaud, a French citizen. Motion at 5. I used the phrase "corporate

---

[2] Even were it appropriate to reconsider my ruling, I would decline to do so. An adequate foundation was laid to support the testimony of Mérian regarding RotaTHEAM's business history. He is the president of RotaTHEAM, *see* Transcript at 63, and acquired knowledge of its history from discussions with individuals who had worked there for more than 40 years, *see id*. at 157.

[3] The sentence at issue is the first full sentence on page 11 of the redacted version of the Decision. *See* ECF No. 173 at 11.

5

history" in a layperson's, rather a technical, sense, and the plaintiff does not dispute that the parties have a "shared business history." Reply at 6. Hence, no correction is required. However, for purposes of clarification, and in an abundance of caution, I amend the sentence at issue to refer to a shared "business," rather than "corporate," history. That sentence, hence, is amended as follows:

> A corporate history, strictly speaking, is a marketing device; the problem in this case is that the parties do, in fact, share a business history.

**Conclusion of Law re: Corporate History.** *See* Motion at 6-9. Denied. The plaintiff finally requests that I amend the Decision to bar RotaTHEAM from continuing to market RotaBELT as having the corporate history reflected in Plaintiff's Exhibit 10 and the last page of Plaintiff's Exhibit 38. *See id*. at 6. It asserts that I erred in concluding that this type of conduct did not violate paragraph 4(a) of the Consent Judgment and, in the alternative, that I should conclude that it violates paragraph 4(c). *See id*. at 6-9; *see also* Decision at 9-11. I find no error and, hence, deny this request.

Paragraph 4(a) provides that the defendants "will discontinue use in the United States of any company name, trade name, or product or service name containing the term 'Theam' or 'RotaTheam' in any form, including but not limited to any phonetic or visual likeness thereto ('Prohibited Terms'), and will discontinue the marketing, sale and distribution of all products and services bearing such Prohibited Terms." Consent Judgment ¶ 4(a). It adds, in relevant part, that, "[f]or avoidance of doubt, DEFENDANTS may continue to use the term 'RotaBelt' in their business activities, so long as it is not cross-marketed or otherwise linked to the Prohibited Terms." *Id*.

The plaintiff contends that my finding that paragraph 4(a) of the Consent Judgment "cannot reasonably be read to require RotaTHEAM to disavow or ignore its corporate history when seeking customers in the United States" constitutes a manifest error of law because RotaTHEAM's

6

representations about RotaBELT's origin were not only a blatant cross-marketing and linking of RotaBELT to THEAM but also false and misleading in suggesting, for example, that RotaTHEAM has been selling parts and conveyors in the United States since 1982.  Motion at 7-8.

In the absence of any definition in the Consent Judgment of the terms "cross-marketed or otherwise linked to the Prohibited Terms" or any provision therein addressing the defendants' use of shared corporate or business history, *see generally* Consent Judgment, paragraph 4(a) of the Consent Judgment simply does not clearly and unambiguously forbid the conduct at issue.  Thus, there is no error.  *See, e.g., United States v. Saccoccia*, 433 F.3d 19, 28 (1st Cir. 2005) ("The question is not whether the order is clearly worded as a general matter; instead, the 'clear and unambiguous' prong requires that the words of the court's order have clearly and unambiguously forbidden *the precise conduct on which the contempt allegation is based*.") (emphasis in original).

The plaintiff's alternative argument that the conduct at issue should be found to violate paragraph 4(c) of the Consent Judgment is also unavailing because the plaintiff neither previously raised that argument nor identifies manifest error in my conclusions regarding the related arguments that it did raise.  *See* Decision at 11-13 (addressing bases on which plaintiff claimed paragraph 4(c) violated); Motion at 8-9; 9C Wright & Miller § 2582 (party not entitled, in guise of Rule 52(b) motion, "to a second opportunity to litigate a point . . . or to advance new theories") (footnote omitted).  Indeed, I found that paragraph 4(c) "clearly prohibits any suggestion that RotaTHEAM . . . owned any conveyor or replacement part sold by the plaintiff" and that "the inclusion of all units sold by the plaintiff in the defendants' claimed number of total sales suggests that RotaTHEAM owned those units before they were sold."  Decision at 12.

7

## II. Conclusion

For the foregoing reasons, the Motion is **GRANTED IN PART** and otherwise **DENIED.** I simultaneously file herewith my Amended Findings of Fact and Conclusions of Law on Plaintiff's Motion for Contempt.

Dated this 29th day of December, 2017.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge